UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTINE ALEXANDER,       *
                                         *
        Plaintiff,          *
                                       *
     v.                     *       Civil Action No. 09-10776-JLT
                                       *
LAWRENCE WEINER,        *
ROBERT DIENER, M.D.,      *
REBECCA LUBELCZYK, M.D., and *
DOES 1-10, all in their individual and *
official capacities,          *
                                       *
        Defendants.      *

MEMORANDUM

January 18, 2012

TAURO, J.

I.    Introduction

       Plaintiff in this action is a male-to-female transsexual currently in the custody of the Massachusetts Department of Correction (DOC).  In her complaint she[1] alleges that Defendants, who are officials responsible for her medical care, have violated her Eighth and Fourteenth Amendment rights by failing to provide her with adequate medical treatment for her gender identity disorder ("GID"). Presently at issue are Defendant Weiner's Motion to Dismiss [#98], Defendant Lubelczyk's Motion to Dismiss [#104], and Defendant Diener's Motion to Dismiss [#106].

---

[1] Although Plaintiff is biologically male, the court will refer to Plaintiff as female out of respect to Plaintiff's self identification as female.

II.     Background

A.      Factual Background[2]

Plaintiff is a male-to-female transsexual currently in custody of the Massachusetts

Department of Correction (DOC) at MCI-Norfolk.  In late 2003, Plaintiff was diagnosed with

Gender Identity Disorder ("GID").  GID is recognized as a major mental illness by the Diagnostic

and Statistical Manual, Fourth Edition Text Revision.  The appropriate and generally accepted

treatment for Plaintiff is based on "Standards of Care" published by the Harry Benjamin

International Gender Dysphoria Association, Inc. ("Harry Benjamin") and consists of: (1)

hormone therapy; (2) a real-life experience as living as a member of the opposite sex; and (3) sex

reassignment surgery.  The "Standards of Care" also state that cross-sex hormones often are

medically necessary for treating GID and that they "'improve the quality of life and limit

psychiatric co-morbidity which often accompanies lack of treatment.'"[3]  Plaintiff states that

administrating hormones to a transsexual can diminish serious psychological problems such as

depression and suicide risk.

At the time of Plaintiff's diagnosis of GID in 2003, the diagnosing clinicians found that

Plaintiff was "ready and eligible for the Benjamin Standards of Care."[4]  Since her initial diagnosis,

Plaintiff has been receiving hormone replacement therapy and psychological counseling for her

---

[2]Because the issues analyzed here arise in the context of a motion to dismiss, this court presents the facts as they are related in Plaintiff's Second Amended Complaint [#96], see Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

[3]Second Am. Compl. [#96] at ¶ 24 (quoting The Harry Benjamin International Gender Dysphoria Association's Standards of Care for Gender Identity Disorder at 13 (6th ed.) (2001).

[4]Id. at ¶ 26.

GID.  Plaintiff currently suffers from facial and body hair, and male pattern baldness.  In

December 2003, Dr. Martha Warth determined that Plaintiff should be given Rogaine or Propecia

(Propecia is a form of finasteride) to deal with these issues and enhance patient's progress towards

feminization.  Since 2004, multiple doctors under contract with the DOC have prescribed

finasteride and laser hair removal to treat Plaintiff's GID.

 Plaintiff alleges that for individuals with GID, hormone therapy and laser hair removal are

not cosmetic treatments.  They are, instead, medically necessary treatments to address a major

mental illness. Defendants are aware that doctors hired by the DOC have repeatedly ordered that

Plaintiff be given laser hair removal treatment.  But, to date, Defendants have not provided

Plaintiff with this treatment.  Plaintiff alleges that Defendants have knowingly refused to provide

Plaintiff with the full course of treatment as ordered by multiple doctors hired by the DOC.  As a

result of this refusal, Plaintiff has suffered severe depression and anxiety.  Plaintiff asserts that

failure to provide her with the medical treatment will lead to serious bodily harm, untreated

mental illness and continued depression.

 Between mid-2005 and the commencement of this action, Plaintiff has filed a series of

complaints and grievances with DOC's health services division.  None of these grievances or

complaints has resulted in Plaintiff receiving the prescribed treatment.  On July 20, 2010,

Plaintiff's therapist, Dr. Mark Burrows, told her that the GID Treatment Committee, which must

approve treatments for GID patients, had determined she should not receive either requested

treatment.

 Defendants in this action are the officials responsible for administering Plaintiff's

prescribed care.  Plaintiff alleges that Defendants are aware that a serious risk of harm to Plaintiff

exists if she does not receive her prescribed medical care and that Defendants have, nonetheless, failed to provide adequate medical care. Plaintiff contends that Defendants are acting in bad faith and do not genuinely perceive a conflict between providing Plaintiff with adequate medical treatment and security concerns at MCI-N. The Second Amended Complaint concludes by stating that Defendants have knowingly and unreasonably disregarded an intolerable risk of harm to Plaintiff and will continue to do so unless injunctive relief is entered.

      B.     Procedural Background:

Plaintiff filed the original Complaint in this case in May, 2009.[5] That Complaint was dismissed without prejudice in November, 2009, based on Plaintiff's failure to exhaust her administrative remedies.[6] On April 6, 2011, this court allowed Plaintiff's Motion to Reopen Case,[7] and on April 27, 2011, Plaintiff filed the Second Amended Complaint.[8] In May, 2011, Defendant Terre Marshall filed a Motion to Dismiss.[9] In June, 2011, Defendants Hamel and Lubelczyk filed a Motion to Dismiss,[10] and, separately, Defendants DeCoste, Diener, and Herrick-Lynn filed a Motion to Dismiss.[11] Defendants DeCoste, Diener, and Herrick-Lynn also filed a Motion for Partial Summary Judgment.[12]

---

[5]Compl. [#1].

[6]Mem. and Order [#64].

[7]Order [#92].

[8]Am. Compl. [#96].

[9]Mot. to Dismiss [#98].

[10]Mot. to Dismiss [#104].

[11]Mot. to Dismiss [#106].

[12]Mot. for Summ. J. [#108].

In November, 2011, Plaintiff filed a <u>Notice of Voluntary Dismissal</u> of all claims against Defendants Herrick-Lynn, DeCoste and Erik Hamel.[13]  A hearing was held before this court on the pending dispositive motions filed by the remaining Defendants on January 4, 2012.  At that hearing, it was established that Lawrence Weiner had replaced Defendant Marshall as Assistant Deputy Commissioner for Clinical Services at the Department of Correction.  Lawrence Weiner has, therefore, been substituted for Terre Marshall as a defendant in this action by the operation of Fed. R. Civ. P. 25(d).[14]

On January 11, 2012, Plaintiff filed an <u>Unopposed Motion to Withdraw Without Prejudice Plaintiff's Claims with Respect To Finasteride</u>[15], which this court hereby ALLOWS.  The only remaining claims in this case, therefore, are Plaintiff's claims under 42 U.S.C. § 1983 that Defendants' refusal to administer laser hair removal and/or electrolysis amounts to a violation of Plaintiff's rights under the Eighth and Fourteenth Amendments.

Because Defendant Diener's <u>Motion for Partial Summary Judgment</u> [#108] addressed only Plaintiff's claims regarding administration of finasteride, that <u>Motion</u> is hereby DENIED AS MOOT.  Before the court, therefore, are the motions to dismiss raised by Defendants Marshall, Lubelczyk, and Diener.

III.    <u>Discussion</u>

A.    <u>Legal Standard</u>

As this court has previously found, "[t]he standard for evaluating a motion to dismiss for

---

[13][#132].

[14]<u>See</u> Fed. R. Civ. P. 25(d).

[15][#134].

failure to state a claim is clear.  While this court must accept all of Plaintiff's factual allegations as true, bare assertions and conclusions of law are not entitled to similar weight."[16]  In order to survive a motion to dismiss for failure to state a claim, a complaint must allege "'a plausible entitlement to relief.'  There must be sufficient facts in the complaint to state a claim upon which relief can be granted as to each defendant named in the complaint."[17]

For an inmate to state a claim for relief for failure to provide adequate medical care under the Eighth Amendment, the complaint must allege, "(1) that [she] has a serious medical need; (2) which has not been adequately treated; (3) because of [Defendants'] deliberate indifference; and (4) that deliberate indifference is likely to continue in the future."[18]  As the First Circuit has made clear, "[t]he Eighth Amendment standard is in part one of subjective intent."[19]  "[S]ubjective intent is often inferred from behavior and even in the Eighth Amendment context . . . a deliberate intent to harm is not required. . . . Rather, it is enough for the prisoner to show a wanton disregard sufficiently evidenced 'by denial, delay, or interference with prescribed health care.'"[20]

Deliberate indifference may be manifested in a variety of ways, including by "prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or

---

[16]Phillips v. Methuen __ F. Supp. 2d __ 2011 WL 4793220 at *3 (D. Mass, 2011) (citing Special Situations Fund III, L.P. v. Am. Dental Partners, Inc., 775 F. Supp. 2d 227, 237 (D. Mass. 2011)).

[17]Phillips, 2011 WL 4793220 at *3 (quoting Rodrigues-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) citing Ocasio-Hernandez v. Fortuno-Burset, ___ F.3d ___, 2011 WL 1228768, *13 (1st Cir. April 1, 2011)).

[18]Kosilek v. Maloney, 221 F. Supp. 2d 156, 185 (D. Mass. 2002).

[19]Battista v. Clarke, 645 F.3d 449, 453 (citing Farmer v. Brennan, 511 U.S. 825, 839-40 (1994).

[20]Id. (citing Farmer 511 U.S. at 835.)

delaying access to medical care or intentionally interfering with treatment once prescribed.

Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states

a cause of action under § 1983."[21]  Although the First Circuit has not expressly ruled on the issue,

other circuits have found that, "[a]llegations that prison officials denied or delayed recommended

treatment by medical professionals may be sufficient to satisfy the deliberate indifference

standard."[22]

   A prison official is a proper defendant in an Eighth Amendment suit if that official was

"personally involved" in the decision to deny treatment for Plaintiff's serious medical need.[23]

Personal involvement may be established, "by showing that the official knew of the prisoner's need

for medical care and yet failed to provide the same."[24]

   Because the court approaches this issue in the context of a motion to dismiss, the court

_____

[21]Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); see also Cecil v. Brace (quoting Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir. 2006) ("[F]or medical treatment in a correctional facility to offend either the Eighth or the Fourteenth Amendments to the Constitution, the care 'must involve acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.")

[22]Williams v. Fisher, 2003 WL 22170610, at *7 (S.D.N.Y.) (citing Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987) ("Prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctor."), see also Johnson v. Wright, 234 F. Supp. 2d 352, 361 (S.D.N.Y. 2002) ("Prison officials may not 'substitute their judgments for a medical professional's prescription.") (quoting Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000)); Wandell v. Koenigsmann, 2000 WL 1036030, at *7 (S.D.N.Y. July 27, 2000) ("Proof of deliberate indifference may be found where a prison official or employee 'intentionally denies or delay[s] access to medical care or intentionally interferes with the treatment once prescribed.'" (quoting Estelle, 429 U.S. at 104-05))."

[23]See Braga v. Hodgson 605 F.3d 58, 61 (1st Cir. 2010) (granting summary judgment in favor of Defendant Sheriff because of Plaintiff's failure to allege Sheriff's "personal involvement with or knowledge of [Plaintiff's] medical care.").

[24]Ramirez v. Colon, 21 F. Supp. 2d 96, 98 (D.P.R. 1997).

takes all facts in the <u>Second Amended Complaint</u> as true, and reviews the pleadings in the light
most favorable to Plaintiff.[25]

      B.    <u>Application</u>

      In the present case, Plaintiff has made sufficient factual allegations in the <u>Second Amended</u>
<u>Complaint</u> to support a plausible claim for relief under § 1983 against each of the remaining
Defendants.

      Plaintiff has properly alleged, and Defendants do not contest, that Plaintiff has a serious
medical need because of her GID diagnosis.[26]  Plaintiff has also alleged that her GID has not been
adequately treated because Defendants have failed to provide her with laser hair removal and/or
electrolysis.[27]  Plaintiff asserts that, following her GID diagnosis on October 21, 2003, the
diagnosing clinicians, "found that she was 'ready and eligible for the Benjamin Standards of care,'
and recommended that her GID be addressed 'through hormone administration and ongoing
psychotherapy.'"[28]  The <u>Second Amended Complaint</u> also states that "[s]ince 2004 multiple

---

    [25]<u>See</u> <u>Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.</u>, 524 F.3d 315, 321 (1st Cir. 2008);
<u>Pettengill v. Curtis</u>, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting <u>Rodriguez-Ortiz v.</u>
<u>Margo Caribe, Inc.</u>, 490 F.3d 92, 96 (1st Cir. 2007)).

    [26]Second Am. Compl. [#96] at ¶¶ 21-22.  See also [#99] at 14 (acknowledging that to
state an Eighth Amendment violation Plaintiff would have to allege that Defendant acted with
deliberate indifference to Plaintiff's GID), [#105] (in the memorandum, defendants do not contest
that GID may constitute a serious medical need), and [#107] at 7, n.3 (stating that Defendants do
not contest whether GID is a serious medical need for the purposes of this motion.).

    [27]Second Am. Compl. [#96] at ¶¶ 26-29.  Because this court has ALLOWED Plaintiff's
<u>Unopposed Motion to Withdraw Without Prejudice Plaintiff's Claims With Regard to Finasteride</u>,
[#134], only Plaintiff's claims seeking laser hair removal and/or electrolysis remain.

    [28]Second Am. Compl. [#96] at ¶ 26.

doctors under contract with the DOC have prescribed . . . laser hair removal for [Plaintiff],"[29] and that laser hair removal and/or electrolysis is medically necessary to treat her GID.[30]  Plaintiff goes on to state that, "[a]s a result of the defendants' refusal to provide [her] with the full course of treatment [required for her GID], [she] has suffered severe depression and anxiety, and the failure to provide medical treatment to her will lead to serious bodily harm, untreated mental illness and continued depression."[31]

These allegations, taken as true, are sufficient to establish that Plaintiff has a serious medical need, which has not been adequately treated under the Eighth Amendment standard.  As this court has previously found, GID may "constitute[] a serious medical need to which prison officials may not be deliberately indifferent."[32]  Plaintiff has also clearly pled sufficient facts to support her contention that her GID is not being adequately treated. At this stage of the litigation, Plaintiff must merely state a plausible claim for relief, taking all facts in the Second Amended Complaint as true.   Although the parties disagree as to whether Plaintiff's current regimen of GID treatment is adequate, that is a question more properly determined by a trier of fact, and not on a motion to dismiss.

The Complaint also contains detailed factual allegations to support Plaintiff's contention that her inadequate treatment is due to Defendants' deliberate indifference, and that such deliberate indifference is likely to continue in the future.  Plaintiff sets out at least three separate

---

[29]Id. at ¶ 28.

[30]Id. at ¶ 29.

[31]Id. at ¶ 34.

[32]Adams v. Federal Bureau of Prisons, 716 F. Supp. 2d 107, 112 (D. Mass. 2010) (Tauro, J.).

occasions on which she was prescribed laser hair removal and/or electrolysis.[33]  She also details a

long history of administrative appeals and repeated requests to individuals in various positions of

authority at the DOC that her doctors' orders be followed.[34]  Under the Eight Amendment,

"[a]llegations that prison officials denied or delayed recommended treatment by medical

professionals may be sufficient to satisfy the deliberate indifference standard."[35]  As the First

Circuit pointed out in Battista, "it is enough for the prisoner to show a wanton disregard

sufficiently evidenced 'by denial, delay, or interference with prescribed health care.'"[36]  Here,

where Plaintiff has alleged that Defendants repeatedly ignored treatment prescriptions given to

Plaintiff by her doctors, she has pled enough facts to satisfy the deliberate indifference standard

for the purposes of a motion to dismiss.

A plaintiff may establish personal involvement of prison officials in an alleged

constitutional violation by showing that the official "knew of the Prisoner's need for medical care

and yet failed to provide the same."[37]  In light of Plaintiff's voluntary dismissal of Defendants

DeCoste, Hamel, and Herrick-Lynn, only Defendants Weiner, Lubelczyk, and Diener remain.

Plaintiff has given detailed factual allegations in the Second Amended Complaint that support a

finding of "personal involvement" in the alleged Eight Amendment violation by each of these three

---

[33][#96] at ¶ 28.

[34][#96] at ¶ 35- 60.

[35]Williams v. Fisher 2003 WL 22170610, at 7 (citing Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); see also Thomas v. Rufo 1994 WL 175407, *4 (D. Mass.) (finding that whether failure to provide Plaintiff with prescribed medication amounted to deliberate indifference is a factual issue not appropriately disposed of on summary judgment).

[36]Battista 645 F.3d at 453 (citing DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991)).

[37]Ramirez v. Colon, 21 F. Supp. 2d 96, 98 (D.P.R. 1997).

Defendants.

Plaintiff has stated that Defendant Lubelczyk, "as the Associate Medical Director at MCI Norfolk, has a direct, practical responsibility for administering medical care ordered by the physicians treating Alexander for GID."[38]   Plaintiff has also alleged that Defendant Lubelczyk failed to permit Plaintiff to receive her prescribed treatment, including laser hair removal, after reviewing that treatment.[39]   Because of this, Plaintiff has stated sufficient facts concerning Defendant Lubelczyk's personal involvement in the denial of medical care to survive a motion to dismiss.

Plaintiff alleges that Dr. Diener is the Chairman of the DOC's GID Treatment Committee.[40]   Plaintiff fully sets forth the prescriptions she was given for laser hair removal and/or electrolysis, alleges that Defendant Diener was aware that this treatment was recommended by Plaintiff's treating physicians, and that in spite of this awareness, Dr. Diener failed to provide Plaintiff with the recommended treatment.[41] Plaintiff goes on to assert that, "On July 20, 2010, [Plaintiff's] therapist . . . informally informed [Plaintiff] that the GID Committee had determined that she should not receive either finasteride or laser hair removal treatment."[42]   Plaintiff has, therefore, properly alleged that her care fell below Eighth Amendment standards, and that the inadequacies in treatment were due to Defendant's deliberate indifference.  Defendant Diener

---

[38] [#111] at 10, 2d Am. Compl. ¶¶ 12-13, 30, 59-60.

[39] [#96] at ¶ 59.

[40] Id. at ¶ 9.

[41] See Id. ¶¶ 9, 28, 57, 61-62.

[42] Id. at ¶ 57.

rests his argument in the <u>Motion to Dismiss</u> on his contention that the care provided to Plaintiff was adequate, and therefore that he did not act with deliberate indifference to her condition.[43]  In light of Plaintiff's pleadings, whether or not Plaintiff's care was adequate is a question of fact more appropriately determined by the jury.[44]

Plaintiff also states a plausible claim for relief against Defendant Weiner.  As the parties made clear at oral argument, Defendant Weiner has replaced Defendant Marshall as Assistant Deputy Commissioner for Clinical Services at the DOC.  The new holder of an official position is substituted for a named party when the named party leaves that official position while the suit is pending and the plaintiff is seeking injunctive relief.[45]  Plaintiff seeks only injunctive relief. Defendant Weiner is, therefore, automatically substituted for Defendant Marshall in this action, because Plaintiff states a plausible claim against Defendant Marshall.  Plaintiff states that Marshall, in her official capacity, was aware of Plaintiff's prescribed course of medical treatment and responded to Plaintiff's filed grievances by first, claiming that Plaintiff's grievances had been resolved, and then telling Plaintiff to address her concerns with her primary care providers.[46] Because Plaintiff adequately alleged that Defendant Marshall was aware of her serious medical need and her prescribed treatment, yet denied Plaintiff the recommended treatment, she states a

---

[43][#107] at 7-15.

[44]See <u>Thomas v. Rufo</u> 1994 WL 175407, *4 (D. Mass.) (finding that whether failure to provide Plaintiff with prescribed medication amounted to deliberate indifference is a factual issue not appropriately disposed of on summary judgment).

[45]  Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.")

[46]Second Am. Compl. [#96] at ¶¶ 39-49, 55, 58, 61-65.

plausible claim for relief.

IV.    Conclusion

Because Plaintiff has alleged sufficient facts in the Second Amended Complaint [#96] to support an allegation of a violation of her Eighth and Fourteenth Amendment rights by each of the remaining named Defendants, Defendant Marshall's Motion to Dismiss [#98], Defendant Lubelczyk's  Motion to Dismiss [#104], and Defendant Diener's Motion to Dismiss [#106] are DENIED.  Plaintiff's Unopposed Motion to Withdraw without Prejudice Plaintiff's Claims With Respect to Finasteride [#134] is ALLOWED.  Defendant Diener's Partial Motion for Summary Judgment is DENIED AS MOOT.

AN ORDER HAS BEEN ISSUED.


                                                        ____ /s/ Joseph L. Tauro_____
                                                        United States District Judge